Hendrick *v.* Cleghorn.

PHILIP A. HENDRICK & another, executors & trustees, *vs.*
HARRY BAIN LIGGETT CLEGHORN & another.

Middlesex.    February 10, 1950. — June 5, 1950.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & COUNIHAN, JJ.

*Executor and Administrator*, Funeral expenses, Claim by estate.    *Trust*,
    Valuation of real estate, Sale of real estate.    *Res Judicata*.

An executor who had paid the funeral expenses of his decedent was not
    chargeable in his account for the amount thereof on the ground that
    the decedent had been a beneficiary of a trust established under her
    husband's will "to pay . . . [her] funeral and burial expenses" and
    that the executor had not sought reimbursement from the trustee,
    where in all the circumstances, including the fact that "there were not
    funds in the . . . [husband's] estate to pay funeral expenses," the
    executor might reasonably have believed that an attempt to secure
    reimbursement from the trust would not have been worth while.
Trustees, who, in the belief that certain claimants were the true owners
    of certain real estate, conveyed one parcel to the claimants, "aban-
    doned" another parcel, and paid the claimants a sum of money in
    adjustment of rents collected, but who were subsequently adjudged
    to have been entitled to a one-half interest in the property, were
    properly charged in their account for one half the amount paid the
    claimants in adjustment of rents and for one half the value of the
    property as of the date of their appointment.
A decree in a declaratory proceeding, affirmed in substance by this court,
    to the effect that a one-half interest in certain real estate had been
    vested in a decedent, made her interest res judicata and precluded a
    later contention by persons bound by the decree that she had had the
    entire interest in the property.
In view of the fact that in the circumstances trustees were properly
    charged in their account with the value, as of the date of their ap-
    pointment, of an interest in real estate, a contention that they had
    failed to sell such interest seasonably became immaterial.

PETITIONS, filed in the Probate Court for the county of
Middlesex on December 23, 1941, and January 6, 1942, for
the allowance of accounts of the executors and trustees under
the will of Florence A. Story, late of Arlington.

Her will, after establishing a residuary trust for the benefit
of David Mitchell for life, provided that on his death the

trust property should go "to Mrs. Edith Cleghorn, or if she be not living at the time of David Mitchell's death, then said property to be equally divided among her heirs." It appeared that David Mitchell was still living, that Edith Cleghorn had died, and that the respondents and appellants, her two children, were her heirs.

The case was heard by *Davis, J.*

*G. K. Richardson,* (*C. E. Clapp, II,* with him,) for the respondents.

*M. A. Shattuck,* (*L. L. Wadsworth, Jr.,* with him,) for the petitioners.

COUNIHAN, J. These are appeals from three decrees of the Probate Court: one which allowed the substituted first and final account of the executors of the will of Florence A. Story; one which, as modified, allowed the substituted first account of the trustees under the will of Florence A. Story; and one which, as modified, allowed the second account of the trustees. Florence died testate on September 16, 1927, and the appellees were appointed executors of her will on October 21, 1927, and trustees under her will on May 1, 1928.

The appellants are the remaindermen under her will. Florence was the widow of Orville L. Story who died testate in 1916. The appellants objected to the accounts filed by the appellees. They sought to surcharge the executors with the sum of $548.25 which they allege the executors improperly spent for the funeral expenses of Florence. They also challenge the valuation put on certain real estate of the testatrix by the judge in the decree allowing as modified the trustees' substituted first account, as well as the modification of the account in respect to certain rent adjustments made by the trustees. Finally they assert that the values of the real estate should have been determined as of May 1, 1929, or in any event as of a reasonable time after October 21, 1928, because of what they allege to be a mandatory direction to the trustees in the will of Florence to sell her real estate.

The appeal from the decree on the trustees' second account raises no new issues, for if the judge was correct in his

decree on the trustees' substituted first account, the decree on the second account must stand, otherwise it falls.

The judge made a report of material facts and the evidence is reported.

The parts of the will of Florence here material read: "After payment of all my just debts, funeral expenses, and charges of administration, I give, devise and bequeath as follows. . . . The rest and residue of my estate I give, devise and bequeath to Philip A. Hendrick and Fredrick Grossmith, but in trust nevertheless, to sell and resell and deposit the proceeds of any such sale after deductions for necessary expenses, in three or more reputable savings banks and to pay quarterly the interest accruing from such deposits to David Mitchell, of Arlington Massachusetts, during his lifetime."

The parts of the will of Orville here material read: "I give, devise and bequeath to my said wife all my property and estate, both real and personal, wherever the same may be, in trust, nevertheless . . . To provide medical care and assistance when necessary and to pay the funeral and burial expenses of my said wife . . . . If at the time of my [wife's[1]] decease, my mother shall not then be living, then my trustee shall pay, make over and convey all the trust funds and estate to the persons who shall be my heirs at the time of my decease and in the same proportions that they would inherit if I should die intestate."

We shall consider first the payment of the funeral expenses of Florence by her executors. The appellants agree that the executors were primarily liable for the payment of these funeral expenses which they do not complain were excessive, but they contend that the executors are personally liable for the amount of these expenses because of their failure to seek reimbursement from the trustees under the will of Orville, who were directed by his will to provide for payment of the funeral expenses of Florence.

We cannot sustain this contention for the judge expressly

---

[1] See construction in *Hendrick* v. *Mitchell*, 320 Mass. 155, at page 160.

found "It is evident that there were not funds in the Orville L. Story estate to pay funeral expenses." It is true that there was some real property in that estate, but the possibility of recovery from that source may have well seemed to the executors, in the exercise of their honest judgment, too remote to have warranted the attempt. They had a right to consider the legal questions involved; the fact that in her will Florence had expressly authorized her executors to pay her funeral expenses; the amount of money involved; the necessary expense to be incurred in an endeavor to collect it; the absence of any trustee under the will of Orville because of the death of Florence; and the doubtful value of the real estate in the Orville trust. These considerations may have persuaded the executors to believe reasonably that it would not be worth while to undertake recovery from the Orville trust. See Scott on Trusts, § 177, where it is said, "If, however, under all the circumstances it appears to be reasonable not to bring such an action, whether because the expenses of such an action would be out of proportion to what would be received even if the action were successful, or because of doubt as to whether it would be successful, or because of doubt whether if successful the judgment would be collectible, the trustee is justified in failing to bring an action."

The transactions which gave rise to the dispute over the trustees' substituted first account grew out of a series of doubts and misunderstandings about the title to two parcels of real estate formerly owned by Orville, one at 10–12 Devereaux Street, Arlington, and one at 12 Morton Street, Somerville. When the trustees took office they assumed that the entire fee of both these parcels was in them. Accordingly they collected rents from these parcels, paid all the expenses, and paid in full the inheritance tax to the Commonwealth. Sometime in 1930, through counsel, Arthur W. Story and Mabel S. Sewall, the brother and sister of Orville, asserted that they were the owners in fee of these two parcels and demanded that the trustees convey title to these parcels to them and also that the trustees

account to them for the excess of rents collected by them from these properties over expenses. The trustees, after an examination of the will of Orville and of relevant law, concluded that the demands were just. Without judicial determination and without consideration but with at least the implied consent of the then contingent remainderman, Edith Cleghorn, the trustees in good faith conveyed the Devereaux Street parcel to Arthur and Mabel. At the same time they made an adjustment of the rents they had collected and paid Arthur and Mabel the sum of $762.79. Taking the position that the estate of Florence had no interest in it, the trustees "abandoned" the Morton Street parcel.

Subsequently Mrs. Cleghorn changed her mind and notified the trustees that they had erred in disposing of these parcels and in paying over the rents. Thereupon on January 29, 1942, under G. L. (Ter. Ed.) c. 215, § 6B, inserted by St. 1935, c. 247, § 1, and later repealed by St. 1945, c. 582, § 3,[1] the trustees filed in the Probate Court a petition for a declaratory decree to determine the rights of the estate of Florence in these two parcels. After a hearing at which all of the parties were represented, including Mrs. Cleghorn, the judge entered a decree that title to these parcels "at the death of Florence was vested one half in said Florence A. Story, one quarter in said Mabel E. Sewall and one quarter in said Arthur W. Story." On appeal to this court this decree was affirmed with certain unimportant modifications. *Hendrick* v. *Mitchell*, 320 Mass. 155, 159–160. This former decree thus definitely fixed title to these parcels. By its language the law of this Commonwealth was finally settled between all the parties here interested with respect to the ownership of these parcels of real estate and the adjustments of the rents accruing therefrom. It follows that the trustees were wrong in conveying the Devereaux Street parcel, in abandoning the Morton Street parcel, and in adjusting the rents as they had.

[1] ". . . notwithstanding said repeal the provisions thereof shall continue to apply as to *proceedings commenced prior to November first, nineteen hundred and forty-five.*"

To correct this situation after the hearing on the trustees' substituted first account, the judge modified this account by surcharging the trustees with $381.40, which was one half of the amount paid out on the rent adjustments. On conflicting testimony the judge further found that the dwelling house on Devereaux Street "was in a very dilapidated condition, needing so much in the way of repairs and paint that it would be impracticable for the fiduciaries to incur expense to rehabilitate it." He also found "that the property came to the trustees in substantially the condition I have described." He found the fair value of the equity of the Devereaux Street parcel to be $1,150 which he divided in half and surcharged the trustees with the sum of $575. With reference to the Morton Street parcel he found that the "tenement . . . was also in a very poor and run down condition. The cost of rehabilitation was too substantial to justify the cost to the Florence A. Story estate. Tenants and purchasers were not readily available because of the disrepair, and expenditure involved." The fair value of the equity of the Morton Street parcel he found to be $1,327.20 which he likewise divided in half and surcharged the trustees with the sum of $663.60. The judge made no finding as to the date as of which his valuations were established, but we think it may be fairly inferred, from his finding "that the property came to the trustees in substantially the same condition I have described," that his valuations were established as of the date of the appointment of the trustees.

It is a familiar rule that the findings of the judge on oral testimony will not be reversed unless plainly wrong. *Heath v. Heath,* 325 Mass. 126, and cases cited. A thorough examination of the evidence discloses ample support for the findings. There was no error in the decree of the judge in respect to the rent adjustments and the valuations put on these parcels of real estate.

The appellants argue in their brief that the estate of Florence was entitled to all of the real estate and the rents in question because of R. L. c. 140, § 3, as amended by St. 1905, c. 256, which provided that where the whole amount

of the estate did not exceed $5,000 the Probate Court might assign and set out all of the real estate of the deceased to the surviving wife. They assert that because the judge found that the value of the estate of Orville was less than $5,000 when Florence died, her estate was entitled to all of the real estate of Orville then remaining. It appears, however, from the record that counsel for the appellants in his opening stated: "There never was any contention made by me that Florence Story owned the whole property. . . . My position has not changed from the beginning and does not change now." This is consistent with his position in the case of *Hendrick* v. *Mitchell*, 320 Mass. 155, where an examination of his brief shows that he argued that the decree of the Probate Court in that case determining that the estate of Florence owned half of this real estate be affirmed. We believe that the ownership of these parcels was decided once and for all by the decree of this court in that case and that it is not now open to the appellants to raise this issue. We believe that the interest of the estate of Florence in these two parcels became res judicata by the decree in *Hendrick* v. *Mitchell*.

We do not consider the meaning or effect of the so called abandonment of the Morton Street parcel since the trustees have been charged with the full value of the half interest of the trust in the property said to have been abandoned.

There remains one further aspect of the case to be considered. The appellants assert that there was a mandatory direction to the trustees in the will of Florence to sell all the real estate within a reasonable time after their appointment and that, even if the power to sell was not mandatory, the trustees were required as fiduciaries to sell these parcels at a much earlier time than they did dispose of them. The judge made no finding on this point and the trustees did not argue it in their brief. As we have indicated, however, it is a fair inference from the judge's findings that the valuations put on these parcels by the judge were as of the date of the appointment of the trustees, so that after the surcharges by the judge the estate suffered no loss.

We believe that apart from their apparent error of law in respect to title, for which they have been surcharged, the trustees acted as reasonably prudent men in the management of their trust.

*Decrees affirmed.*